UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

CHRISTOPHER L. SCRUGGS,

Plaintiff,

v.                                          CAUSE NO. 3:24-CV-878-GSL-AZ

WOODS, et al.,

Defendants.

OPINION AND ORDER

Christopher L. Scruggs, a prisoner without a lawyer, proceeds in this case on an

Eighth Amendment claim for damages against Captain Lewis, Lieutenant Rojo,

Sergeant Vasquez, Sergeant Williams, Officer Thomas, and Officer Woods for acting

with deliberate indifference to his diabetic condition by failing to assist him with

obtaining adequate food or medication on March 27, 2023. ECF 6. The defendants filed

the pending motion for summary judgment, arguing that Scruggs did not exhaust

administrative remedies with respect to this claim. ECF 28.

Scruggs filed a motion to strike the affidavit attached to the defendants' reply

brief, arguing that it was not verified under penalty of perjury as required by 28 U.S.C.

§ 1746 and that it was not notarized. ECF 37. The defendants filed a motion to amend

the affidavit to include a verification under penalty of perjury. ECF 38. Though the

amended affidavit is not notarized, Scruggs cites no authority for the proposition that

notarization is required. Therefore, the court denies the motion to strike and grants the

motion to amend. The court will also grant Scruggs' motion to file a sur-reply. ECF 38.

In the complaint, Scruggs alleges that he has a diabetic condition that requires him to take insulin and to eat within thirty minutes of each other in order to manage his blood sugar levels. ECF 3. On March 27, 2023, at 2:30 a.m., medical staff gave him a dose of insulin. *Id.* Between 7:00 a.m. and 8:00 a.m., Officer Thomas and Officer Woods gave him a food tray. *Id.* Scruggs gave it back because the food was spoiled and told them that he had taken insulin hours ago and that his blood sugar levels were dropping. *Id.* Scruggs began to feel ill and placed a sign on his door requesting food and medical attention. *Id.* Sergeant Vasquez told Officer Thomas and Officer Woods to ignore Scruggs' requests and to remove his sign, which they did. *Id.* Captain Lewis told Officer Thomas and Officer Woods to place Scruggs in a strip cell if Scruggs set up the sign again. *Id.* When Officer Woods approached Scruggs, Scruggs removed the sign, and when Officer Woods left, Scruggs replaced the sign. *Id.* He removed the signs and passed out. *Id.*

Sometime later, Scruggs told Sergeant Williams and Officer Thomas that he was not okay and needed medical attention. *Id.* One hour later, Scruggs heard from another inmate that Captain Lewis, Lieutenant Rojo, Sergeant Vasquez, and Sergeant Williams told Officer Thomas and Officer Woods not to assist Scruggs and that these defendants laughed about his medical condition. *Id.* Scruggs then recalled that he had a banana and hot chocolate mix in his cell. *Id.* He ate them, which improved his condition. At about 3:00 p.m., he received a dinner tray. *Id.* At about 5:00 pm., a nurse arrived to check his blood pressure and give him a dose of insulin. *Id.* Scruggs had a relatively low blood sugar level, and the nurse asked why he did not seek medical attention earlier when he

told her he had passed out. *Id.* Based on these allegations the court allowed Scruggs to proceed on his Eighth Amendment claim of deliberate indifference against Captain Lewis, Lieutenant Rojo, Sergeant Vasquez, Sergeant Williams, Officer Thomas, and Officer Woods. ECF 6.

In an affidavit, Shannon Smith, grievance specialist at the Westville Correctional Facility, attests that a grievance process is available to inmates. ECF 28-1. The policy sets forth a three-step grievance process. ECF 28-2 at 9-14. First, an inmate must file a formal grievance with the grievance specialist. *Id.* Inmates must submit formal grievances within ten business days of the incident at issue. *Id.* If an inmate is dissatisfied with the grievance specialist's determination on a formal grievance, he may file an appeal with the warden or his designee. *Id.* Finally, if an inmate is dissatisfied with the warden's determination, he may file an appeal with the department grievance manager. *Id.*

The grievance policy also requires that grievances "explain how the situation or incident affects the offender" and that they "suggest appropriate relief or remedy." *Id.* A grievance officer may reject a grievance and return it to the inmate for correction if the content standards are not satisfied. *Id.* A grievance officer also has discretion to consider grievances that do not satisfy the content standards. *Id.* According to the grievance specialist, the departmental records contain no grievances related to his claims but reflect that Scruggs submitted unrelated grievance on March 23, 2023, and April 6, 2023. ECF 28-1 at 3-4.

In response, Scruggs submits a grievance, dated March 27, 2023, the content of which is substantially identical to the allegations in his complaint. ECF 33-2 at 5-6.

3

Though Scruggs referred to Captain Lewis, Lieutenant Rojo, Sergeant Vasquez, Sergeant Williams by only their titles, he wrote their names at the bottom of the first page of the grievance. *Id.* He requested that he receive insulin along with his breakfast tray, unspoiled food, and prompt replacement of spoiled food. *Id.* Scruggs attests that he sent the grievance to the grievance office through the prison mail system. *Id.* at 1-4. He also wrote to the grievance two days later because he did not receive a response. *Id.* He did so again eight days later. *Id.* In reply, the defendants submit another affidavit in which Grievance Specialist Smith attests that this grievance is not in the departmental record and that, if it had been received by the grievance office, it would have been recorded. ECF 36-1.

Summary judgment must be granted when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). To determine whether a genuine issue of material fact exists, the court must construe all facts in the light most favorable to the non-moving party and draw all reasonable inferences in that party's favor. *Heft v. Moore*, 351 F.3d 278, 282 (7th Cir. 2003).

Pursuant to 42 U.S.C. § 1997e(a), prisoners are required to exhaust available administrative remedies prior to filing lawsuits in federal court. The Seventh Circuit has taken a "strict compliance approach to exhaustion." *Dole v. Chandler*, 438 F.3d 804, 809 (7th Cir. 2006). In other words, "a prisoner who does not properly take each step within

the administrative process has failed to exhaust state remedies." *Pozo v. McCaughtry*, 286 F.3d 1022, 1024 (7th Cir. 2002). "To exhaust remedies, a prisoner must file complaints and appeals in the place, and at the time, the prison's administrative rules require." *Id.* at 1025. "Failure to exhaust is an affirmative defense that a defendant has the burden of proving." *King v. McCarty*, 781 F.3d 889, 893 (7th Cir. 2015).

The purpose of a grievance is to alert officials to a problem so that action can be taken to remedy the problem. *Maddox v. Love*, 655 F.3d 709, 722 (7th Cir. 2011). Proper exhaustion of administrative remedies means that "the grievances must contain the sort of information that the administrative system requires." *Strong v. David*, 297 F.3d 646, 649 (7th Cir. 2002). "[I]n line with the purpose of the PLRA—to give a prison an opportunity to correct a problem before litigation, prisoners must provide some identifying information about the accused individuals," *Jackson v. Esser*, 105 F.4th 948, 960 (7th Cir. 2024). "In other words, a grievance must contain enough information about who caused the grieved of problem so that a prison can properly investigate and resolve grievances." *Id.* "Indeed, [the Seventh Circuit has] found exhaustion as to defendants not named in a grievance when, from the content of the grievance and the nature of the complained of conduct the prison was clearly on notice that those unnamed defendants were involved." *Id.*

In the memorandum in support of the motion for summary judgment, the defendants argued for summary judgment on all claims based on the lack of any relevant grievances in the departmental records. In response, Scruggs submitted a relevant grievance and attested that he timely submitted it to the grievance office but

never received a response. In reply, the defendants argue that the grievance does not comply with the content requirements in the grievance policy. In the alternative, the defendants express skepticism regarding the authenticity of the grievance but concede that such credibility disputes are more appropriately resolved at an evidentiary hearing.

More specifically, the defendants argue that the grievance failed to comply with the requirements that a grievance relate to only one issue or event and include a brief, clear statement of the complaint. They argue that the grievance does not sufficiently identify the defendants or their wrongful conduct. They further argue that grievance does not suggest appropriate relief or an appropriate remedy because it does not seek a remedy that the grievance process could provide.

After careful review of the grievance, the court disagrees with the proposition that the grievance does not sufficiently identify the defendants or their wrongful conduct. To the defendants' point, the grievance frequently refers to the defendants by their titles, but he wrote each of their names at the bottom, and the court is able to discern the alleged misconduct of each defendant from the narrative of the grievance.

Nor is the court persuaded by the argument that the grievance did not seek a remedy that the grievance office could provide. To the defendants' point, Scruggs requested preservation of surveillance footage for purposes of litigation as well as a referral to internal investigations, neither of which strikes the court as remedies to the problems described in the grievance. However, it is entirely unclear why adjustments to his insulin schedule and measures preventing the service of spoiled food would not have been appropriate remedies.

Reasonable minds could disagree as to whether the grievance relates to only one issue or event or whether it provides a brief, clear statement of his complaints. Scruggs reasonably might have filed separate grievances on the manner in which medical staff administered insulin and on correctional staff's purported failures to get him unspoiled food and medical attention, but Scruggs might reasonably have viewed these incidences as one event caused by diabetic condition over a single sixteen-hour span of time. Reasonable minds could also disagree as to whether the grievance is clear and brief statements of the events. While Scruggs' prose meanders and includes irrelevant details, it spans only two pages, and the court had little difficulty following it. Indeed, it is unclear how the requirement to provide a clear, brief statement differs from Fed. R. 8(a)(2), which requires the legal complaint to include "a short and plain statement of the claim." Applying this pleading requirement, the court allowed Scruggs to proceed on a substantially similar complaint.

At minimum, Scruggs' grievance serves the essential purpose of giving the prison an opportunity to address his issues, and it substantially complies with the content requirements set forth by the grievance policy. Further, it is unclear how Scruggs could have known about the more exacting standards now proposed by the defendants when he drafted the grievance. *See Ross v. Blake*, 136 S. Ct. 1850, 1859 (2016) (holding that a grievance process may become unavailable when "an administrative scheme [is] so opaque that it becomes, practically speaking, incapable of use"). If the grievance office had received the grievance, the grievance officer could have notified Scruggs of the deficiencies and returned the grievance to Scruggs for revision and

7

resubmission, but this did not occur here. Because Scruggs could not have known of these more exacting content requirements, the court finds that the manner in which Scruggs wrote the grievance was sufficient to exhaust his available administrative remedies.

Nevertheless, there remains a material factual dispute as to whether Scruggs submitted the grievance as he has attested. Though Scruggs asserts that an evidentiary hearing would be a "waste of time," the court finds that the lack of relevant grievances in the departmental records is sufficient to create a material fact as to whether Scruggs properly submitted these grievances. *See* Fed. R. Evid. R. 803(7) (absence of record of a regularly conducted activity). Because the defendants have requested an evidentiary hearing in their reply brief on this factual issue, the court will immediately refer this case to the magistrate judge for an evidentiary hearing.

For these reasons, the court:

(1) GRANTS the motion to amend the affidavit (ECF 36);

(2) DENIES the motion to strike (ECF 37);

(3) GRANTS the motions for leave to file a sur-reply (ECF 38);

(4) DENIES the motion for summary judgment (ECF 28);

(5) GRANTS the request for an evidentiary hearing (ECF 35); and

(6) REFERS this case to Magistrate Judge Abizer Zanzi to conduct an evidentiary hearing and prepare a report and recommendation as provided for by *Pavey v. Conley*, 544 F.3d 739 (7th Cir. 2008), to determine whether Christopher L. Scruggs properly submitted a grievance relating to his claim.

SO ORDERED on June 5, 2026

/s/Gretchen S. Lund
JUDGE
UNITED STATES DISTRICT COURT